# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CROTHALL LAUNDRY SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | No. 17-cv-8928 |
| ) | |
| v. ) | Hon. Amy J. St. Eve |
| ) | |
| OSF HEALTH CARE SYSTEM and ) | |
| DENMAN SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Crothall Laundry Services, Inc. ("Crothall" or "Plaintiff") brought this action against OSF Health Care System ("OSF") and Denman Services, Inc. ("Denman," and collectively with OSF, "Defendants") alleging breach of contract and conversion against OSF (Counts I and II, respectively), and conversion against Denman (Count III). (R. 1, "Compl.") Defendants now move to transfer venue from the Northern District of Illinois to the Central District of Illinois pursuant to 28 U.S.C. § 1404(a). (R. 14, 15, 18.) For the following reasons, the Court grants Defendants' motion to transfer.

## BACKGROUND

### I.     Parties

Plaintiff Crothall is a Delaware corporation licensed to do business in Illinois, with its principal office in Wayne, Pennsylvania. (Compl. at ¶ 1.) As such, Crothall is a resident of Pennsylvania. (R. 24 at 5; R. 28 at 3-4.) *See* 28 U.S.C. § 1391(c)(2) (For venue purposes "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside…if a plaintiff, only in the judicial district in which it

maintains its principal place of business.").  Plaintiff's local office in Illinois is in Wheeling,

within the Eastern Division of the Northern District of Illinois.  (R. 24 at 4.)  "Plaintiff provides

laundry services to institutions, including leasing bed linens, towels, other textiles, and laundry

carts to healthcare facilities[,] and servicing the facilities by laundering and replacing those items

as necessary."  (Compl. at ¶ 2.)

Defendant Denman provides services similar to Crothall.  (*Id*. at ¶ 6.)  Denman, doing

business as Denman Laundry Services, is an Illinois corporation, with its principal office in

Quincy, Illinois.  (*Id*. at ¶ 5.)  Denman performs all cleaning services in Quincy and all of its

employees are located either in Quincy, Springfield, or Peoria.  (R. 18 at ¶4; 18-1 at ¶ 6, 9.)

Quincy, Springfield, and Peoria are within the Central District of Illinois.

Defendant OSF is an Illinois not-for-profit corporation, with its principal office in Peoria,

Illinois, again, within the Central District of Illinois.  (Compl. at ¶ 3.)  OSF operates eleven acute

healthcare facilities throughout the State of Illinois, both in the Northern and Central Districts of

Illinois.  (*Id*. at ¶ 4; R. 15 at 2.)

## II.    Complaint

In Count I, Crothall brings a breach of contract claim against OSF.  (Compl. at ¶ I 17-23.)

In the alternative, Crothall brings a conversion claim against OSF in Count II (*Id*. at ¶ II 1, 18-

24.) and a conversion claim against Denman in Count III (*Id*. at ¶ III 1, 18-25.).

According to the Complaint, Crothall and OSF entered into a contract in 2014 under

which Crothall leased goods and provided services to OSF (the "Contract").  (*Id*. at ¶ 9-10; R. 1-

1, "Contract.")  Under the Contract, Plaintiff agreed to provide laundry services at seven OSF

facilities throughout Illinois, namely Peoria, Rockford, Bloomington, Ottawa, Galesburg,

Pontiac, and Monmouth.  (R. 15 at 2; Contract at 7.)  As already stated, Peoria is within the

Central District of Illinois, as are Bloomington, Galesburg, Pontiac and Monmouth. Rockford and Ottawa are within the Northern District of Illinois, but in different divisions. Rockford is in the Western Division while Ottawa is in the Eastern Division.

In 2016, OSF terminated the Contract with Crothall by letter.[1] (Compl. at ¶ 10-11; R. 15-1; R. 15-2.) Under the terms of the Contract, Plaintiff retained ownership of all of the leased items and OSF was "obligated to return those items immediately upon expiration or termination of the Contract." (Compl. at ¶ 12; Contract at 7-8.) According to Plaintiff, the "parties agreed to a specific schedule for the collection" of Plaintiff's items from OSF's facilities. (Compl. at ¶ 13-14.) Despite the Contract and the parties' schedule, "OSF was unprepared to return all of Plaintiff's linens, other textiles, and laundry carts at each of its healthcare facilities[,] and refused to allow Plaintiff to collect them." (*Id*. at ¶ 15.) Crothall made repeated demands on OSF and Denman to return the remaining items—to no avail.[2] (*Id*. at ¶ 16, I 19, II 20-21, III 21-22.) The items at issue are allegedly worth $1,092,839.30. (*Id*. at ¶ I 20, II 22, III 23.)

## III.     Exhibits and Other Evidence[3]

Defendant OSF attached six exhibits to its motion to dismiss, four of which are letters between itself and Crothall, and two of which are statistics on Illinois district court dockets. All of the correspondence is between Crothall in Wayne, Pennsylvania, and OSF in Peoria, Illinois, according to the addresses written on the letters and letterhead. Significantly, Exhibit 3 is a letter

---

[1] Exhibit 1 is a letter from OSF to Crothall requesting termination of OSF's Contract with Crothall. (R. 15-1.) Exhibit 2 is a letter from Crothall to OSF confirming termination. (R. 15-2.)

[2] For example, Exhibit 4 is a letter from Crothall to OSF asking for payment for the linen and laundry carts that OSF allegedly prohibited Crothall from retrieving. (R. 15-4.)

[3] Defendants attached some exhibits, including their witness lists, to their reply briefs rather than the motions to transfer. The Court provided Plaintiff Crothall an opportunity to file a sur-reply to Denman's witness list and a sur-reply to OSF's witness list.

from Crothall to OSF regarding issues with collecting linen at OSF's St. Francis facility in Peoria. (R. 15-3.) Crothall writes: "St. Francis is approximately 54% of the OSF system linen volume." (*Id.* at 1.) While Plaintiff does note that these documents are not authenticated, it does not actually dispute their accuracy or content, arguing instead that their text proves a different point than Defendants make. (*See, e.g.*, R. 24 at 4 ("OSF's factually unsupported argument using limited unauthenticated documents does not support its position. The referenced exhibits indicate that linens were lost throughout the OSF system, including the facilities in this District, not simply those in OSF's Peoria location.").)

Defendant Denman attached the sworn and notarized affidavit of Greg Hamilton, Denman's Vice President of Operations, to its motion to join OSF's motion for transfer.[4] (R. 18-1.) Hamilton, who is "familiar with the records that Denman keeps in the ordinary course of business and [with] Denman's business activities in Illinois," attests that "Denman's employees involved in this case" and "[a]ll witnesses" are located in Quincy, Springfield or Peoria, and that "Denman does not have any registered office, office, employees, or other facility located in the Northern District of Illinois." (*Id.* at ¶ 3, 6-7, 10.) "The only contact Denman has in the Northern District," according to Hamilton, "is when a Denman employee, who lives in Quincy, drives to Rockford, Illinois[,] to pick up and deliver linen." (*Id.* at ¶ 8.) "Denman performs all cleaning services in Quincy, Illinois." (*Id.* at ¶ 9.) Further, Hamilton maintains that "[a]ny and all evidence produced in this case will come from…[their] headquarters in Quincy, Illinois[,] or Denman's warehouse facilities in Springfield and Peoria, Illinois." (*Id.* at ¶ 11.)

---

[4] With regard to Plaintiff's argument in its sur-reply to Denman's witness list (R. 35.) that Denman failed to include, provide, or file the affidavit, the Court directs Plaintiff to record 18-1.

Denman also submitted a witness list, which includes the names, addresses, and likely testimony of a total of 39 witnesses: 19 Denman witnesses, 16 OSF witnesses, and four Crothall witnesses.  (R. 28-1.)  Denman lists what appear to be the home addresses of 17 Denman witnesses, of which 15 are in cities within the Central District of Illinois and 2 are in Missouri. In addition, all 13 of the OSF witnesses with listed addresses work in cities within the Central District of Illinois.  Denman does not list the address of any Crothall employee.

OSF attached its mandatory initial discovery request responses (R. 34-2.) and Plaintiff's initial discovery disclosures (R. 34-1.) to its reply brief.  Plaintiff Crothall also attached its initial discovery disclosure to its sur-reply.  (R. 35-1.)  OSF's disclosure lists five employees, four working for OSF and one for Crothall, and also attaches a "persons with knowledge" schedule. OSF breaks down its extensive persons with knowledge list by the seven relevant healthcare centers it runs in Illinois and lists employees in each hospital.  Twenty-six witnesses are within the Central District of Illinois: 11 witnesses work in Peoria, eight work in Bloomington, four work in Pontiac, one works in Galesburg, and two work in Monmouth.  Twelve witnesses work in Rockford and are thus are within the Western Division of the Northern District of Illinois. Only three witnesses work in Ottawa, here in the Eastern Division of the Northern District of Illinois.  It appears that all 41 witnesses (different individuals than the five employees already listed) are OSF employees.  OSF states each employee's position but does not include what testimony that individual would give or provide their address beyond listing their facility affiliation.

As for Plaintiff's disclosure, Plaintiff lists 19 witnesses, all of them Crothall employees. Of the 16 witnesses with listed work addresses, eight are in Wheeling, Illinois; one is in Chicago,

Illinois; two are in Peoria, Illinois; two are in Pennsylvania; two are in Wisconsin; and one is in North Carolina. Plaintiff details the discoverable information each witness is likely to provide.

## LEGAL STANDARD

A change of venue in federal court is permitted under 28 U.S.C. § 1404. "Congress enacted the federal change of venue statute…to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). Section 1404(a) provides in part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Under Section 1404(a), the moving party bears the burden of establishing that (1) venue is proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and witnesses, and is in the interest of justice. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, n. 6 (2013); *Research Automation, Inc.*, 626 F.3d at 978; *Grossman v. Smart*, 73 F.3d 364 (7th Cir. 1995); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219; *see also DeKeyser v. Thyssenkrupp Waupaca, Inc*., 860 F.3d 918, 923 (7th Cir. 2017) ("28 U.S.C. § 1404(a) gives a district court discretion to transfer a civil action.").

District courts may make any necessary factual findings when determining venue issues. *See In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008); *RAH Color Techs., LLC v. Quad/Graphics, Inc*., 2018 WL 439210, *3 (N.D. Ill. Jan. 16, 2018); *Body Sci. LLC v. Boston*

*Sci. Corp.*, 846 F. Supp. 2d 980, 991 (N.D. Ill. 2012).  "In ruling upon a motion to transfer under 28 U.S.C. § 1404(a), the Court may consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents."  *Moore v. AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 790 (N.D. Ill. 2001) (quoting *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983)) (giving less weight to evidence without an affidavit, but not disregarding it altogether).  In other words, "[w]hen deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless contradicted by affidavits or other appropriate evidence from the defendant."  *Howze v. United States*, 2015 WL 9315542, *1 (N.D. Ill. Dec. 23, 2015) (citing *Rendon v. Wexford Health Services, Inc.*, 2010 WL 5129818, *1 (N.D. Ill. Dec. 10, 2010), quoting *Andrade v. Chase Home Fin., LLC*, 2005 WL 3436400, *2 (N.D. Ill. Dec. 12, 2005)); *see Simonian v. Monster Cable Prod., Inc*., 821 F. Supp. 2d 996, 998 (N.D. Ill. 2010) ("I am not limited to the allegations in the complaint and may consider affidavits in addressing the motion to transfer.") (citing *Simes v. Jackson Nat'l Life Ins. Co.*, 2005 WL 2371969, *2 (N.D. Ill. Sept. 22, 2005)).

## ANALYSIS

Both Defendants seek to litigate this case in the Central District of Illinois.  Now pending before the Court is Defendants' motion to transfer venue, which Plaintiff opposes.

### I.    Venue is Proper in the Transferor District (Northern District of Illinois)

The parties do not dispute that venue is proper in the transferor district of the Northern District of Illinois.  Indeed, "OSF acknowledges that it is subject to venue and jurisdiction in the Northern District of Illinois…by virtue of its operations in this district."  (R. 15 at 5.)  Likewise, Denman concedes that "venue may technically be proper in the Northern District of Illinois."

(R. 18 at 2.) Plaintiff Crothall also agrees that venue properly lies in the Northern District of Illinois. (R. 24 at 2-3.)

## II. Venue and Jurisdiction are Proper in the Transferee District (Central District of Illinois)

Defendants OSF and Denman argue that venue and jurisdiction are proper in the Central District of Illinois under 28 U.S.C. § 1391(b)(2). (R. 15 at 5-6, R. 28 at 2.) Section 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Defendants claim that "all of the incidents giving rise to Plaintiff's breach of contract action occurred" in the Central District of Illinois, namely at OSF's St. Francis facility in Peoria. (R. 15 at 5.) Further, Defendants are "based in" the Central District of Illinois. (*Id*. at 5-6.) While the Court does not agree that the allegations in the Complaint only involve actions and property in the Central District of Illinois, Defendants have met their burden of establishing that venue and jurisdiction are proper in the transferee district. *See Grossman*, 73 F.3d 364. Further, Plaintiff Crothall does not address and therefore does not dispute that venue is proper in the Central District of Illinois.

## III. Transfer will Serve the Convenience of the Parties and Witnesses, and Promote the Interests of Justice

In deciding whether a transfer will serve the convenience of the parties and witnesses, and promote the interests of justice, the Court looks to both private and public interests. *See Atl. Marine Const. Co.*, 571 U.S. at n. 6; *Research Automation*, 626 F.3d at 978; *Coffey*, 796 F.2d at 219-20; *Nalco Co v. Envt'l Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010). Private interests include the plaintiff's choice of forum, the situs of the material events, the relative ease of access to sources of proof, and the convenience to the parties and witnesses. *See Atl. Marine*

*Const. Co.*, 571 U.S. at n. 6; *Research Automation*, 626 F.3d at 978; *Nalco*, 694 F. Supp. 2d at 998; *see also Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 955 (N.D. Ill. 2017); *Schwarz*, 317 F. Supp. 2d at 835.  Factors traditionally considered in the public interest analysis, also known as the "interest of justice" factors, include the congestion of the respective court dockets, prospects for a speedy trial, the courts' familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy.  *See Atl. Marine Const. Co.*, 571 U.S. at n. 6; *Research Automation*, 626 F.3d at 978; *Coffey*, 796 F.2d at 219-20.  Again, the moving party "has the burden of showing that 'the transferee forum is clearly more convenient.' "  *Heller Fin., Inc. v. Midwhey Powder Co*., 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey*, 796 F.2d at 219–20).

### A.        Private Interest Factors

Private interest factors include: (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience to the parties, and (5) the convenience to the witnesses.  *See Atl. Marine Const. Co.*, 571 U.S. at n. 6; *Research Automation*, 626 F.3d at 978; *Nalco*, 694 F. Supp. 2d at 998.  On balance and as detailed below, the private interest factors point to transfer to the Central District of Illinois.

### 1.        Plaintiff's Choice of Forum

In general, courts give considerable deference to a plaintiff's choice of forum.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."); *In re Nat'l Presto Indus., Inc*., 347 F.3d 662, 663-64 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *AAR Int'l, Inc. v.*

*Nimelias Enters. S.A.*, 250 F.3d 510, 524 (7th Cir. 2001) ("[T]here is a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.") (quotations and citations omitted). Defendants are correct that this factor "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." *A & R Logistics Holdings, Inc. v. Curl*, 2015 WL 5561179, *4 (N.D. Ill. Sept. 21, 2015) (quoting *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). Contrary to Defendants' contention, however, *some* conduct did occur in this District so Plaintiff's choice is afforded some deference.

Deference to Plaintiff's choice of forum is lessened, however, when "the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC*, 846 F. Supp. 2d at 992. *See Piper Aircraft Co.*, 454 U.S. at 255 ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum."); *Nicks*, 260 F. Supp. 3d at 955. Here, Crothall's choice of forum is not its home forum. Plaintiff is a Delaware corporation with its principal place of business in Wayne, Pennsylvania. While it has an office within the Northern District of Illinois, it is not a resident of Illinois. As such, Plaintiff's choice of forum is entitled to less deference. *See RAH Color Techs., LLC*, 2018 WL 439210 at *3 ("[D]eference is lessened, however, when the plaintiff's chosen forum is not the plaintiff's home forum." (quotations and citations omitted)); *Body Sci. LLC*, 846 F. Supp. 2d at 993 ("[B]ecause Plaintiff's chosen forum is not its home forum and this District has relatively weak connections with the operative facts giving rise to the litigation, Plaintiff's choice of forum is entitled to little weight."); *Biomet, Inc. v. Stryker Howmedica Osteonics Corp.*, 2004 WL 769358, *4 (N.D. Ill. Apr. 9, 2004) ("Plaintiff

is an Indiana corporation with its principal place of business in Warsaw, Indiana.  The Northern District of Illinois is therefore not its home forum, and Biomet's choice is entitled to less deference than it normally would be due.").

Further, this District has a weak connection to "the operative facts giving rise to the litigation," especially relative to the Central District of Illinois.  *Body Sci. LLC*, 846 F. Supp. 2d at 992.  While the OSF facilities where Defendants allegedly converted Crothall's items are located throughout Illinois, five are within the Central District of Illinois, one is in the Western Division of the Northern District of Illinois, and only one is here, in the Eastern Division of the Northern District of Illinois.  Additionally, two of the three parties' headquarters are in the Central District of Illinois.  In fact, Denman's uncontested—and in fact unacknowledged[5]— affidavit states that it has virtually no connection to the Northern District of Illinois, save for one Quincy employee traveling to Rockford.  Further, the allegedly converted linens, if they were "taken by either Defendant, are located in Peoria or Quincy."  (R. 28 at 3.)  This District, no parties' home forum, has a significantly weaker connection to the case than the Central District of Illinois and, as such, this factor favors transfer.

### 2.  Situs of Material Events

Defendants contend that "Plaintiff's chosen forum has no significant connection to the events set forth in the Complaint."  (R. 15 at 6.)  While OSF concedes that it has operations in the Northern District of Illinois, it claims that "*none* of these operations give rise to Plaintiff's breach of contract or conversion claims."  (*Id*. at 7 (emphasis added).)  OSF points to several letters between itself and Crothall, arguing that "Plaintiff's claim of allegedly unreturned linen

---

[5] In its sur-reply to Denman's witness list (R. 35.), Plaintiff maintains that Denman failed to include, provide, or file the affidavit—part of the docket at record 18-1.

relates to conduct at one OSF facility in the Central District of Illinois, which linen Plaintiff[]

claims was converted in Peoria, by a company based in Quincy." (*Id*.) Denman attests that

"[t]he only contact Denman has in the Northern District is when a Denman employee, who lives

in Quincy, drives to Rockford, Illinois[,] to pick up and deliver linen." (R. 18-1 at ¶ 8.) Under

Defendants' theory, "the claims at issue in this case arise *entirely outside* of this District and

arise *exclusively within* the Central District of Illinois." (R. 15 at 7 (emphasis added).)

        Plaintiff's Complaint, however, does not isolate any facility as the heart of the events at

issue. "To be sure, the Contract at issue here concerned linens and other items at multiple OSF

locations, including two located within this District: OSF St. Anthony in Rockford and OSF St.

Elizabeth in Ottawa." (R. 24 at 4.) Defendants overstate their position when they claim that the

Northern District of Illinois has *no* connection to the facts at hand. The Complaint alleges that

conversion occurred throughout the OSF healthcare system and not just at facilities located in the

Central District of Illinois. In fact, the letters attached by OSF as exhibits to its motion to

dismiss list the seven OSF facilities at issue, making it clear that *at least some* activity occurred

in Ottawa and Rockford—in the Eastern and Western Divisions, respectively, of the Northern

District of Illinois.

        Defendants are correct, however, that on balance the situs of material events points to a

significantly stronger connection to the Central District of Illinois. Denman's uncontested

affidavit explains that it has very limited contact with this District—one employee who lives in

Quincy travels to Rockford to pick up linen. According to Crothall's statement in a letter to OSF

regarding issues with Crothall's collection of linen and laundry carts, over half of the OSF

system's linen volume is at OSF's St. Francis facility in Peoria. (R. 15-3 at 1.) Further, of the

six remaining facilities, four are in the Central District of Illinois and one is in the Western

Division of the Northern District of Illinois. Additionally, if Defendants converted any linens, these items are likely located in Quincy or Peoria now. Further, both Defendants' principal places of business are in the Central District of Illinois while Plaintiff is headquartered in Pennsylvania. Denman's warehouse and cleaning facilities are also within the Central District of Illinois. (R. 28 at 4.) As such, the situs of material events factor weighs heavily in favor of transfer to the Central District of Illinois.

### 3. Relative Ease of Access to Sources of Proof

Defendants OSF and Denman argue that their headquarters in Peoria and Quincy, respectively, contain all documentary evidence relating to Crothall's claim. (R. 15 at 7.) OSF states that "[w]hatever documents Plaintiff has relating to the claims at issue in this case are not in the Northern District of Illinois." (*Id*.) Further, OSF argues that Crothall's correspondence, all from Pennsylvania, reveals that Crothall's records are at its headquarters in Pennsylvania. (R. 34 at 4.) OSF also points out that the allegedly missing linen is likely within the Central District of Illinois, where Defendants are. (*Id*. at 4-5.)

An affidavit from Greg Hamilton, Denman's Vice President of Operations, provides that "[a]ll witnesses are located in Quincy, Springfield or Peoria" and further "[a]ny and all evidence produced in this case will come from our [Denman's] headquarters in Quincy, Illinois[,] or Denman's warehouse facilities in Springfield and Peoria, Illinois." (R. 18-1 at ¶ 10-11.) Further, Denman argues that all records, spreadsheets, inventories, the "actual physical linens," employees, communications, and other relevant materials are all within the Central District of Illinois. (R. 28 at 4-5.)

Plaintiff does not contest the facts presented by OSF and Denman. Instead, Plaintiff asserts that the ease of access to sources of proof factor is irrelevant given the ease of

transferring and transporting documentary and digital evidence. With regard to documents, Plaintiff is correct that this is a less significant factor given technological advances. *See Cent. States, S.E. and S.W. Areas Pension Fund v. Bergquist*, 2018 WL 1014511, *3 (N.D. Ill. Feb. 22, 2018) ("The relative ease and access to sources of proof is a neutral factor given the ease of transferring electronic documents."); *Einhaus v. Textmunication Holdings, Inc*., 2018 WL 398258, *2 (N.D. Ill. Jan. 12, 2018) ("To the extent the other sources of proof are documents…they are presumed to be easily transportable, so the access to proof factor does not weigh heavily in favor of either district.").

Sources of proof, however, are not limited to documents. As Plaintiff points out, there will likely be documents—and witnesses—throughout Illinois and also in Pennsylvania. The headquarters of two of the three parties are in the Central District of Illinois, where many of the document storage facilities, employee-witnesses, and the allegedly converted linens are located. Indeed, the correspondence reveals that Crothall operates out of Pennsylvania, not its Wheeling outpost. Moreover, five of the seven facilities at issue, including one which accounts for half of the volume of OSF's linens, are located in the Central District of Illinois and another is in a different Division of the Northern District. While "[t]he Court will not speculate as to which party will have a higher volume of relevant evidence," *Biomet, Inc.*, 2004 WL 769358, *5 (N.D. Ill. Apr. 9, 2004), the Court makes the reasonable assumption that the sources of proof, documentary and otherwise, will track the situses of material events. On balance, the ease of access to sources of proof factor weighs in favor of transfer to the Central District of Illinois.

### 4. Convenience to the Parties[6]

When analyzing the convenience to the parties, courts assess the parties' "respective residences and abilities to bear the expense of trial in a particular forum." *Biomet, Inc*., 2004 WL 769358 at *5 (quoting *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995)); *see Teich v. US Foods, Inc*., 2018 WL 497368, *4 (N.D. Ill. Jan. 22, 2018) ("The Court considers the convenience of the parties, particularly the residences and resources of the parties—in essence, their ability to bear the expense of trial in a particular forum." (citations and corrections omitted)). The Northern District of Illinois is no party's home forum. While Crothall has an office within the Northern District of Illinois, its headquarters are in Pennsylvania while both Defendants' headquarters are within the Central District of Illinois. Transfer to the Central District of Illinois will allow Defendants, two of the three parties, to litigate from their home forum. *See Biomet, Inc*., 2004 WL 769358 at *5 ("In this case, neither corporation's home forum is the Northern District of Illinois. Transfer to the District of New Jersey would allow at least Stryker to litigate from its home forum, while also allowing Biomet to litigate in a district where it maintains a corporate office."). Additionally, all parties are corporate entities that the Court assumes are equally able to bear litigation costs. Crothall, headquartered in Pennsylvania, will have to bear higher costs to litigate outside of its home forum regardless of which Illinois district court hears its case. On the whole, the convenience to the parties factor favors transfer to the Central District of Illinois.

### 5. Convenience to the Witnesses

"Convenience to the witnesses is the factor often viewed as having the most weight in determining whether to transfer venue." *Nicks*, 260 F. Supp. 3d at 957 (quoting *St. Paul Fire &*

---

[6] The convenience of counsel is not a factor courts must take into account when ruling on a motion to transfer.

*Marine Ins. Co. v. Brother Int'l Corp.*, 2006 WL 1543275, *4 (N.D. Ill. June 1, 2006) (citations

omitted)).  When evaluating the convenience of the witnesses, "the Court must examine 'the

nature and quality' of each proposed witness's testimony…[and] whether the witnesses are likely

to appear voluntarily, whether they will be subject to compulsory process, and whether they are

experts, whose attendance is controlled by the party who hired them." *Toriumi v. Ritz–Carlton

Hotel Co., LLC*, 2006 WL 3095753, *2 (N.D. Ill. Oct. 27, 2006) (citations omitted).

Specifically, "the court may consider the following factors: the number of potential witnesses

located in the transferor and transferee districts; the expense of transportation and the length of

time the witnesses will be absent from their jobs; the nature, quality, and indispensability of the

witnesses testimony; and whether the witnesses can be compelled to testify." *Lewis v. Grote

Indus., Inc*., 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012) (citation omitted).  "Vague

generalizations concerning potential witnesses are insufficient…[and] the party seeking transfer

on the grounds of witness convenience must clearly specify the key witnesses to be called and

include a generalized statement about what their testimony will include." *St. Paul Fire*, 2006

WL 1543275 at *4.

 Further, courts "generally assign little weight to the location of employee-witnesses

because they are usually within the control of the parties and are likely to appear voluntarily in

either forum." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 988 (S.D. Ind. 2016);

*see Rosen v. Spirit Airlines, Inc*., 152 F. Supp. 3d 1055, 1061 (N.D. Ill. 2015) ("[The]

convenience of non-party witnesses should be given more consideration than party witnesses

(and their employees) under this factor, since party witnesses normally must appear voluntarily

as part of their employment."); *Rorah v. Petersen Health Care*, 2013 WL 3389063, *4 (N.D. Ill.

July 8, 2013) ("[T]he convenience of employee witnesses is given less weight than the

convenience of non-party witnesses.").  In other words, the Court must give the convenience of non-party witnesses more consideration than party witnesses and their employees.  Here, however, the parties do not identify any non-party or third-party witnesses.  All the witnesses are employees of the parties.

Defendants argue that all party witnesses "likely reside in either the Central District of Illinois or [in] Pennsylvania" and that "[t]hird party witnesses will not reside in the Northern District of Illinois."  (R. 15 at 8.)  Denman's employee's affidavit affirmatively states that all of its witnesses are located in Quincy, Springfield, or Peoria.  (R. 18-1 at ¶ 10.)  Further, Denman submitted a witness list, which a court may review in its discretion on a motion to transfer.  *See Kjaer Weis*, 2017 WL 4882336, n. 3; *Schwarz*, 317 F. Supp. 2d 829, n. 3-4.  Of a total 39 listed witnesses or 30 witnesses with addresses, 28 work within the Central District of Illinois.  These include both Denman's and OSF's employees who were involved with OSF's change in laundry service providers and will have information relevant to the controversy.

OSF attached its mandatory initial discovery requests to its reply brief, describing the testimony of four OSF employees and one Crothall employee.  OSF also attached a 41-witness "persons with knowledge" list of OSF's employees.  Of those 41 employee witnesses, 26 are within the Central District of Illinois, 11 of them in Peoria specifically.  Of the remaining witnesses, 12 are in Rockford, within the Western Division of the Northern District of Illinois, and only three are in Ottawa, within this Division of the Northern District of Illinois.

Plaintiff claims that "witnesses are likely located throughout the State," and that it will seek information and call witnesses from all of OSF's facilities, including those outside of the Central District of Illinois.  (R. 24 at 6.)  Crothall's "employees who were on site during the transfers [of leased items] are based out of this District."  (*Id.*)  Plaintiff submitted its initial

discovery disclosures, which lists 19 witnesses, all of them Crothall employees.  Of the 16 witnesses with listed contact information, nine are within the Northern District of Illinois, two are in the Central District of Illinois, and five are outside of Illinois.

As the moving party, Defendants must satisfy their burden under § 1404(a) and establish that the transfer will serve the convenience of the parties—and here specifically, the witnesses.  *See Grossman*, 73 F.3d 364; *Coffey*, 796 F.2d 217.  Both Denman and OSF have provided witness lists.  Plaintiff does not challenge Denman's or OSF's witnesses, but only argues that the *number* of witnesses alone should not persuade the Court.  Combining all three parties' witness lists and removing overlap, there are 24 witnesses in the Northern District of Illinois (both Divisions), 46 witnesses in the Central District of Illinois, and 14 witnesses out of state.  Even discounting the number of witnesses (84 after combing all three parties' witness lists and removing repeated names) and assuming that not every supply chain manager, housekeeper, or distribution associate will provide vital information to the case, the bulk of the witnesses will still likely be from the Central District of Illinois.  The Court recognizes that this transfer factor is not just a "number's game" and further that not all of the witnesses on Crothall's, Denman's, or OSF's lists will be deposed or called.  It is reasonable, however, for the Court to note that over half of the witnesses work within the Central District of Illinois.

Turning to the substance of the testimony, corporate witnesses with decision-making authority at the three headquarters in Quincy, Peoria, and Wayne will likely have important information, although employees from Crothall's Wheeling outpost may also provide relevant testimony.  The alleged conversion, however, occurred mostly, although not exclusively, in the Central District of Illinois, where five of the seven OSF healthcare facilities are located.  The housekeepers, distribution associates, and linen aides on the witness lists can attest to and

describe how Crothall was allegedly deprived of collecting the leased items from OSF's hospitals and how Denman later took these items as its own. Both the number of witnesses and the content of their testimony points to the Central District of Illinois. Accordingly, the convenience of witnesses factor favors transfer.

### B. Public Interest Factors

Public interest factors include: (1) the congestion of the respective court dockets and prospects for a speedy trial; (2) the courts' familiarity with the applicable law; and (3) the desirability of resolving controversies in each locale and the relationship of each community to the controversy. *See Atl. Marine Const. Co.*, 571 U.S. at n. 6; *Research Automation*, 626 F.3d at 978 (citations omitted). The interest of justice "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation*, 626 F.3d at 978 (citing *Coffey*, 796 F.2d at 220–21). On balance and as detailed below, the public interest factors overwhelmingly point to transfer to the Central District of Illinois.

### 1. Relative Congestion and Speedy Trial

Speed to resolution "is indicative of judicial economy, which may be measured by the median length of time from filing to disposition on the merits or the median time from filing to trial." *Craik v. Boeing Co*., 37 F. Supp. 3d 954, 963 (N.D. Ill. 2013). According to the most recent federal court management statistics dated September 2017,[7] the Central District of Illinois is relatively better positioned to quickly dispose of this matter than the Northern District of Illinois. To clarify, although the median time from filing a civil case to disposition in the

---

[7] 12-month period ending September 30, 2017. Report available at http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2017.pdf.

Northern District of Illinois is 8.5 months and in the Central District of Illinois is 9.5 months, the median time from filing to trial in the Northern District of Illinois is 36.8 months and in the Central District of Illinois is 34.0 months. Additionally, the reported number of cases per judge in the Central District of Illinois is significantly lower (at 486 cases) than the reported number of cases per judge in the Northern District of Illinois (at 784 cases). Based on these statistics, the parties have a slightly better prospect for a speedy trial in the less-congested Central District of Illinois. As such, this public interest factor weighs in favor of transfer to the Central District of Illinois.

### 2.      Familiarity with Applicable Law

Both this Court and the Central District of Illinois are presumably equally familiar with the law at issue. The Court—and the parties—agree that this factor is neutral.

### 3.      Desirability of Resolving Controversies in Locale and Relationship of Community to Controversy

Defendants maintain that this District has "little, if any, connection" to the material events of the case. (R. 15 at 9.) Defendants emphasize that their headquarters are located within the Central District of Illinois and further that "the alleged breach and conversion supposedly occurred at St. Francis, a healthcare facility in Peoria, Illinois." (*Id*.) Denman's Vice President of Operations Hamilton attests in his affidavit that Denman has limited contact with this District and that all of its operations, from its offices and cleaning facilities to its employees, are within the Central District of Illinois. Lastly, Defendants argue that the Central District of Illinois "has the greatest interest in resolving controversies that arise within its district, particularly where the controversies relate [to] a major healthcare provider headquartered in Peoria, Illinois." (*Id*. at 9-10.) Denman emphasizes that "Defendants are major employers in Central Illinois[,] and their existence and well-being are of major importance to the community." (R. 28 at 8.)

Based on the allegations, the controversy involves facilities in both the Northern and Central Districts of Illinois, and not just the Central District as Defendants posit. The St. Francis healthcare center in the Central District of Illinois, however, appears to be more significant to the case than the other facilities—at this stage of the proceedings and in light of the parties' briefings, including evidence that more than half of the allegedly converted linen volume was at that facility. Further, as already discussed, of the remaining six OSF facilities at issue in this case, four are within the Central District of Illinois and one is in the Western Division of the Northern District of Illinois. Only one of the facilities is here, in the Eastern Division of the Northern District of Illinois. The balance of the controversy points to a greater connection to the Central District of Illinois. Additionally, while OSF influences many communities, it is likely a large player in Peoria and the Central District of Illinois has a greater interest than this Court in resolving a controversy involving two local companies, OSF and Denman. As such, this factor weighs in favor of transfer to the Central District of Illinois.

## CONCLUSION

Weighing the private and public factors, the Court in its discretion grants Defendants' motion to transfer to the Central District of Illinois and hereby transfers this case.

**Dated:** April 6, 2018                                    **ENTERED:**

_____
AMY J. ST. EVE
United States District Court Judge